UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

Case No. 24-CV-00160-MDN

UNITED STATES OF AMERICA,
      *Plaintiff,*
      v.

$4,698,514.00 in U.S. Currency, et al.,
      *Defendant.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . /

## BRIEF IN SUPPORT OF CLAIMANTS' MOTION TO DISMISS COMPLAINT FOR FORFEITURE *IN REM* (DE#1)

The Claimants, Adam and Brooke Bregman, submit this Brief in Support of their Motion to Dismiss the Complaint for Forfeiture *In Rem* (DE#1) pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), 12(b)(6), Supplemental Rules G(2) and E(2)(a), and the Fifth, Eighth and Tenth Amendments to the United States Constitution for lack of *in rem* jurisdiction, improper venue, insufficient pleading, failure to state a claim, because the Complaint is time-barred, and for violations of the Excessive Fines Clause of the Eighth Amendment, the equal protection and due process guarantees of the Fifth Amendment and the Tenth Amendment's limitation on federal action.

## I.     **The Complaint**

On May 3, 2024, the government filed a Complaint for Forfeiture *in Rem* (the "Complaint"), commencing this action to forfeit millions of dollars in cash, jewelry,

art, and furniture seized from several residences belonging to multiple individuals. DE#1. On September 24, 2024, in response to the Complaint, Adam and Brooke Bregman ("Claimants") filed Verified Claims to $5,329,194 USD (Complaint, ¶¶ 2, 3), two pieces of artwork (Complaint, ¶¶ 6a-b), ten pieces of jewelry (Complaint, ¶¶ 7a-e, h-k, m), a coin (Complaint, ¶ 7l) and flatware (Complaint, ¶7n), together the "Defendant Property."[1] In its 66-page complaint, the government ***does not allege a single fact*** that connects the Defendant Property to specific unlawful activity which could justify its forfeiture. Instead, the government attempts its forfeiture effort by adopting general, speculative assertions made by unidentified individuals, *e.g.*, Complaint ¶¶ 146, 150, and by remaining vague in its descriptions of Adam Bregman ("Bregman")'s alleged marijuana "sales" and "business," conflating the drug trafficking activities allegedly committed by other individuals with the activities of licensed marijuana companies operating lawfully under California state law.

The Complaint contains a lengthy recitation of facts, the vast majority of which do not involve either of the Claimants. To start, almost half of the Complaint

---

[1] *See* DE#27 (Verified Claim of Brooke Bregman); DE#28 (Verified Claim of Adam Bregman). Verified Claims have also been filed (as to separate defendant property) by Francesca Tosti (DE#9), Gina Nieto (DE#10), and Giacomo Tosti (DE#11).

is the repeated enumeration and description of the seized property. In the general "Facts" section, Complaint, ¶¶ 15-39, Bregman is mentioned once, in ¶ 28 when an unnamed "cooperating defendant"[2] describes Bregman as a "client[] of LEIDERMANN and REJA" who "used the FastBox service to move marijuana and marijuana proceeds between California and other FastBox locations." There are no further dates, identified transactions, parties involved, or any additional details alleged with respect to this allegation against Bregman. In the subsequent fact sections, "Marijuana Proceeds Money Laundering Scheme" (Complaint, ¶¶ 40-64), "Seizure of $2,033,094.98 From JP Morgan Chase Account XXXX2583" (Complaint, ¶¶ 65-108), "Marijuana Proceeds Laundered Through Art and Fine Furniture" (¶¶ 109-123), and "Information Used to Search Elk Property 1" (¶¶ 124-136), Claimants (and the Defendant Property) are **_not mentioned once_**.

Then, in ¶¶ 139-158 and 161-168 of the Complaint, the government offers a hodgepodge of facts that pertain to Bregman, without explaining the significance to the Defendant Property nor a connection to the "FastBox" organization discussed in the earlier facts sections.

Throughout the Complaint, the government leaves vague the "marijuana business" that it accuses Bregman of conducting. It is unclear from the

---

[2] The government describes this individual as a "defendant," however, he is not a codefendant in Bregman's criminal case.

government's sparse, ambiguous and conclusory allegations if the government is attempting to forfeit millions of dollars in cash and property by alleging that licensed cannabis companies operating in, and lawfully under the laws of, the State of California—of which the federal government has been aware of for a decade—violated federal law.

Further, to the extent that the government is alleging that transactions lawful under state law should be forfeited, the Complaint should be dismissed as a violation of the Tenth Amendment and the Equal Protection Clause. "Forfeitures are not favored; they should be enforced only when within both letter and spirit of the law." *United States v. One 1936 Model Ford V-8 De Luxe Coach, Motor No. 18-3306511*, 307 U.S. 219, 226 (1939). Any attempted forfeiture of money earned through licensed cannabis companies under the civil drug forfeiture statute enacted in 1970 during the "war-on-drugs" is against the letter and spirit of the law, and the growing national trend toward legalizing and decriminalizing marijuana.[3] In the state of Nebraska, voters approved legalizing medical cannabis, which was signed into law by Governor Jim Pillen on December 10, 2024.[4]

---

[3] *See* President Biden Commutes Nearly 2,500 Drug Convictions, January 17, 2025, available at https://www.forbes.com/sites/irisdorbian/2025/01/17/president-biden-commutes-nearly-2500-drug-convictions/.

[4] *See* Medical cannabis takes effect; prohibitionists try to block it in court, December 17, 2024, available at https://www.mpp.org/states/nebraska.

Claimants cannot adequately respond to the Complaint because the allegations are insufficiently particular and inadequately pled. Claimants should not have to guess what unlawful activity the government is claiming is connected with the Defendant Property. The Complaint fails to allege a legal basis to forfeit the Defendant Property and should be dismissed.

## II.  **Lack of Jurisdiction and Improper Venue**

According to the government, "[t]his Court has *in rem* jurisdiction over the Defendant property pursuant to 28 U.S.C. § 1355(b)(l)(A) because acts or omissions giving rise to the forfeiture occurred in this district." Complaint, ¶ 10. The government cites the same statute for venue. Complaint, ¶ 11.

The Complaint contains two paragraphs of facts that allegedly occurred in the District of Nebraska (¶¶ 15, 16), neither of which are connected to Claimaints or the Defendant Property. Paragraph 15 details a traffic stop that was initiated in Lincoln, Nebraska, wherein a person named Tyler Gooch was found to be in possession of marijuana products that were to be delivered to an unidentified individual, "CD-1." Paragraph 16 details a subsequent search of CD-1's residence in Papillion, Nebraska. The Complaint offers no explanation for the connection between Gooch, CD-1 (neither of whom are codefendants in the criminal case against Bregman) and the Defendant Property (or to Claimants), aside from the bald

assertion that Bregman allegedly used the same marijuana shipping company as Gooch and CD-1.

There is not a single act or omission involving or related to the Defendant Property or to Claimants that occurred in the District of Nebraska. The Defendant Property was not located or seized in Nebraska. The Defendant Property was seized in California and Florida and is "currently in the custody of the Department of Homeland Security, Customs and Border Protection (CBP)." Complaint, ¶¶ 2, 3, 6, 7). At no point has the Defendant Property been in the District of Nebraska.[5]

## III.  <u>**Insufficient Pleading**</u>

Two sets of pleading standards apply to civil forfeiture complaints: the plausibility standard of Fed. R. Civ. P. 8; and the heightened *in rem* forfeiture pleading standards specifically set forth in Supplemental Civ. P. Rule G(2) and

---

[5]  ¶ 159 enumerates the property that was seized from the "FLORIDA RESIDENCE" [the Bregmans' marital home] on December 12, 2023. ¶ 160 enumerates the property that was seized from "BREGMAN's Vine Street Apartment" in California on December 12, 2023.

Under Supplemental G(2)(d), "if the property is tangible, state its location when any seizure occurred and—*if different—its location when the action is filed*" (emphasis added). Given the Complaint's silence as to the location of the Defendant Property, Claimants assume the property is still in the districts in which they were seized (California and Florida).

E(2)(a).[6] Claimants respectfully submit that both standards apply with neither satisfied here.[7] *United States v. $134,972 Seized from FNB Bank*, 94 F.Supp.3d 1224, 1239 (N.D. Ala. 2015) (heightened Rule G(2) standard applies); *United States v. $3,168,400 in U.S. Currency*, 2017 WL 10591752, *3 (C.D. Calif. Dec. 5, 2017) (heightened standard applies beyond *Iqbal/Twombly* standard to complaint under 18 U.S.C. § 981(a)(1)(A) & (C)).

This Court must dismiss the Complaint for failing to meet the particularity requirements. Initially, a civil forfeiture must satisfy the Supplemental Rules for Admiralty and Maritime Claims, 18 U.S.C. § 983(a)(3)(A), including Supplemental Rule E(2)(a) which requires that "a complaint shall state the circumstances from which the claim arises with such particularity that the defendant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. E(2)(a). "Rule E(2)(a) imposes a more demanding pleading standard than do the Federal Rules of

---

[6] Even before the Supreme Court announced the plausibility pleading standard, courts held civil forfeiture complaints to a heightened pleading standard in recognition of the drastic nature of their procedures and results. *See United States v. $39,000 in Canadian Currency*, 801 F.2d 1210, 1218 (10th Cir. 1986) ("The drastic nature of admiralty and forfeiture remedies requires heightened protections not present in general civil practice.").

[7] The sufficiency of a forfeiture complaint is subject to a Rule 12 motion to dismiss prior to the filing of an answer. *United States v. $8,221,877.16*, 330 F.3d 141, 153 (3rd Cir. 2003).

Civil Procedure." *U.S. v. U.S. Currency, in Amount of $150,660.00*, 980 F.2d 1200, 1204 (8th Cir. 1992). "Rule E(2)(a) contemplates that a claimant be able to respond *without further procedural maneuvering.*" *$39,000 In Canadian Currency*, 801 F.2d at 1216 (emphasis added). Since "[i]t is the Government that is attempting to deprive a person of property," it is "the Government's burden to satisfy the initial pleading requirements by specifically alleging the circumstances underlying the claim." *Id*. at 1217.

Second, a civil forfeiture complaint must comply with the minimum plausibility-in-pleading standards of Fed. R. Civ. P. 8 described by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). Fed. R. Civ. P. Supp. A(2). *United States v. Any and All Ownership Interest Held in the Name*, 2020 WL 278762, *4 (D.N.J. Jan. 16, 2020). Under that standard, "the Government must at a minimum allege a plausible connection between the underlying offenses and the relevant property." *Id*. at *11. Also, under the plausibility standard, conclusory allegations must be disregarded as insufficient to allege a plausible claim, especially those which simply recite formulaic elements of a claim. *Twombly*, 550 U.S. at 555 (applied in *United States v. $40,000 in U.S. Currency*, 2010 WL 2330353, *1 (W.D.N.C. May 11, 2010), *adopted*, 2010 WL

2330352 (W.D.N.C. June 7, 2010)); *accord Jackson v. JPay Corp.*, 2020 WL 5264514, *1 (S.D. Fla. July 27, 2020).

The plausibility standard carries with it the statutory requirement that the government labors under the preponderance standard of proof imposed in 2000 with the Civil Asset Forfeiture Reform Act.[8] Among other requirements, a civil forfeiture complaint must adequately allege the elements of the claimed criminal offense.

Third, the applicable pleading rules of Supplemental Rule G(2) are more exacting still. Emphasizing those requirements germane to this Complaint, Supplemental Rule G(2) states that a civil forfeiture complaint must:

(a) be verified;

(b) state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the defendant property, and venue;

(c) describe the property with reasonable particular*ty*;

(d) if the property is tangible, state its location when any seizure occurred and—*if different—its location when the action is filed*;

(e) identify the statute under which the forfeiture action is brought; and

---

[8] *United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 909 (7th Cir. 2016) (quoting *United States v. $506,231 in U.S. Currency*, 125 F.3d 442, 445 (7th Cir. 1997)) ("'[T]he existence of money or its method of storage are not enough to establish probable cause for forfeiture,' much less enough to meet the now-heightened standard of a preponderance of the evidence.").

(f) *state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.*

(emphasis added). On the last requirement, the statutory burden of proof imposed upon the government at a trial is proof that the property is subject to forfeiture. 18 U.S.C. § 983(c). Further, where, as here, the Government claims that the defendant property is forfeitable because it was "involved in" the offense (*see, e.g.*, 18 U.S.C. § 981(a)(1)(a); Complaint, ¶ 12)), the Government "shall establish that there was *a substantial connection* between the property and the offense." 18 U.S.C. § 983(c)(3) (emphasis added). These are minimal pleading requirements that must be satisfied to permit imposition of a response duty upon a claimant.

The "rule contains no exceptions to this requirement." *United States v. $38,000 in U.S. Currency*, 816 F.2d 1538, 1548 (11th Cir. 1987) (dismissing complaint under Rule E(2)). This requires a complaint to state sufficient facts to support a reasonable belief that the property is subject to forfeiture—here, that it has a substantial connection to the cited offense. *Id*. Where, as here, the government claims that Defendant Property is involved in money laundering and "drug trafficking" offenses, it must allege facts to prove it. *United States v. $1,399,313.74 in U.S. Currency*, 591 F.Supp.2d 365, 374 (S.D.N.Y. 2008) (conclusory allegations insufficient). Courts require particularity:

10

> [T]he complaint fails to assert facts supporting a reasonable inference
> that the money was involved in a drug transaction. It specifies no date
> or location of any purported or intended exchange, no dollar amount
> of such an exchange, no specific type or quantity of controlled
> substance, and no identified participant… These claims of
> unidentified parties and unspecified conduct neither give a claimant a
> reasonable starting point from which to initiate a meaningful
> investigation nor permit a responsive pleading that can address
> identities, quantities, locations, or dates of an alleged offense. These
> unsupported and conclusory allegations do not meet any definition of
> the word 'particularity.'

*$39,000 In Canadian Currency*, 801 F.2d at 1220 (emphasis added).

Like the allegations in *$39,000 in Canadian Currency*, the allegations in this

Complaint are "unacceptably vague." *Id*.

> In sum, the only conceivable response to these complaints' conclusory
> allegations is a general denial. Rule E(2)(a) requires a more specific
> complaint. To answer responsively or to investigate further an
> allegation that property was used in connection with criminal activity,
> a claimant must have a point from which to begin. These complaints
> supply no starting point. *More importantly, the allegations fail to
> supply a factual basis for a reasonable inference that the property is
> subject to forfeiture.* The district courts, therefore, properly dismissed
> the complaints for failure to comply with Rule E(2)(a).

*$39,000 In Canadian Currency*, 801 F.2d at 1221–22 (emphasis added).

## IV.    **The Complaint Fails to Allege a Plausible Tracing Claim**

The Complaint fails to allege a valid forfeiture claim against the Defendant

Property and requires a more definite statement to do so. The Complaint identifies

three grounds for forfeiture (¶¶ 12-14). The specific forfeiture authority invoked by

11

the Complaint for ¶ 12 is 18 U.S.C. § 981(a)(1)(A), which makes forfeitable any property "involved in a transaction or attempted transaction in violation of" the money laundering laws "or any property traceable to such property." Complaint ¶ 13 alleges forfeiture under 18 U.S.C. § 981(a)(1)(C), which subjects Defendant Properties to forfeiture as they allegedly "*constitute or were derived from proceeds traceable* to" these specific unlawful offenses. DE#1 (emphasis added).

For both types of forfeiture under § 981—"involved in" or "traceable to"—a substantial connection, or nexus, must exist between the defendant property and the alleged criminal offense, and this is a necessary burden of proof—of the government—by a preponderance of the evidence. 18 U.S.C. §§ 983(c)(1) & (3). This tracing burden has been characterized as proof that, more likely than not, the property at issue constitutes traceable proceeds. *In re Rothstein, Rosenfeldt, Adler, P.A.*, 717 F.3d 1205, 1211 (11th Cir. 2013).

Complaint ¶ 14 invokes 21 U.S.C. § 881(a)(6). Forfeiture under 21 U.S.C. § 881(a)(6) requires identification of specific drug transactions that the Defendant Property purportedly derives from. "Forfeiture actions under 21 U.S.C. § 881(a)(6) require the Government to provide the district court with 'a showing of 'probable cause for belief that a *substantial connection exists* between the property to be forfeited and the criminal activity.'" *United States v. $405,089.23 U.S. Currency*,

12

122 F.3d 1285, 1289 (9th Cir. 1997) (internal citations omitted; emphasis added). Forfeiture under 21 U.S.C. § 881(a)(6) is factually unfounded.

The government bears the burden of proving that the Defendant Property is traceable to the charged offense. *United States v. Ayika*, 837 F.3d 460, 471 (5th Cir. 2016). The burden is "demanding" and requires the government to establish that it is more likely than not that current, identifiable monies are derived from the alleged criminal offense, which requires first a determination whether *any* of the remaining monies are themselves traceable to the prior offense. *Id*., at 472, 474.

The Complaint attempts to establish the requisite nexus by claiming unnamed cooperators "believed" "some" of the cash came from "illegal" activity. "CD-3 ***believed*** some if not all the cash provided by BREGMAN or LEIDERMANN to purchase the TORREYSON RESIDENCE was derived from illegal marijuana sales" (Complaint, ¶ 150); "CD-3 ***believed*** BREGMAN would have used some if not all the proceeds from the sale of 17121 Rancho Street, Los Angeles, California to purchase the FLORIDA RESIDENCE." (Complaint, ¶ 157).[9] A mere "belief" or

---

[9] Interestingly, in ¶ 39, the Complaint states: "Through the investigation—to include *inter alia* dozens of interviews, historical records checks, open-source checks, law enforcement database checks, seized document review, electronic forensic data collected—HSI determined REJA and LEIDERMANN's source of cash was derived from the illegal sale and transportation of marijuana and marijuana proceeds from 1999 to 2023." There is no such statement connecting the investigation with the Defendant Property or to either Claimant.

"suspicion" that money was connected to illegal drug activity is not enough to support forfeiture. As the Ninth Circuit has explained:

> The evidence demonstrates a transfer of a large sum of money with original ties to cash, *but there is no evidence of a connection between this particular money and drug activity*. The Government did not present evidence, for example, that Arlt or Wren had purchased or sold a large quantity of derivative chemicals around the same time as the transfers or, for that matter, any evidence regarding the origin of the cash used to purchase the cashier's checks. As noted above, the 'mere suspicion [that the money is connected to some] illegal activity is not enough to establish probable cause that the money was connected to drugs.' Hill's statement that he suspected Arlt's cash 'was not from legal sources' *is nothing more than a vague suspicion of some illegal activity*.

> The mere fact that the transactions involved a large sum of money that had its origins in cash is also insufficient. We have held that 'the test requires more than the mere existence of a large amount of cash to establish a connection between that cash and illegal drug transactions…

*United States v. $405,089.23 U.S. Currency*, 122 F.3d 1285, 1290 (9th Cir. 1997).

The sparse and conclusory claims are insufficient to establish the nexus required by law.

> Thus, the plain language of subsection (a)(1)(A) requires the seized property to have been "involved in" the stated violations or be "traceable to" such property. Likewise, the plain language of subsection (a)(1)(C) requires the seized property to constitute or be derived from "proceeds traceable" to the stated violations. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 759 (3d Cir. 2009) ("We begin, as we must, by examining the plain language of the statute."); *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001) ("Where the statutory language is plain and unambiguous, further inquiry is not

14

required.") (citation omitted). As a result, the plain language of the relevant provisions indicates that the stated nexus – involved in, traceable to, and proceeds – is an element of the civil forfeiture claims. *Accordingly, and at a minimum, the Government must plausibly plead the requisite connection between the underlying offense and the seized property.*

*United States v. Any & All Ownership Int. Held in the Name*, No. CV169158JMVJBC, 2020 WL 278762, at *9 (D.N.J. Jan. 16, 2020).

Further, the government makes **_no effort_** to trace any of the Defendant artwork or jewelry to **_any_** specific unlawful activity or explain how there is probable cause to forfeit. The government spends several paragraphs detailing the purchase and sale of several properties, without explaining the significance to the Defendant Property.

## V.    **The Complaint Fails to State a Non-Conclusory Claim**

The Complaint purports to allege three "Grounds for the Forfeiture" under three separate forfeiture statutes. Complaint, ¶¶ 12-14. The first ground for forfeiture (*id.*, ¶ 12) consists of a conclusory allegation of forfeiture under 18 U.S.C. § 981(a)(1)(A). The first ground, like the rest, consists of nothing more than a conclusory listing of statutory elements in a single paragraph. *Id.* Such a conclusory allegation must be disregarded as a "formulaic" recitation insufficient as a matter of law under Rules 8 and 12(b)(6). *Iqbal*, 556 U.S. at 679. Conclusory pleadings

15

reciting statutory elements are legally insufficient in civil forfeiture cases, too. *United States v. $55,518*, 728 F.2d 192, 196 (3rd Cir. 1984).

The remaining two "grounds for forfeiture" are equally conclusory and are different only in that they recite the elements of different forfeiture statutes, 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6), which are also done rotely in single paragraphs. Complaint, ¶¶ 13-14. These conclusory allegations contain not one factual assertion connecting the Defendant Properties to any offense. No effort is taken to connect any of the facts recited in other parts of the Complaint with any recited element, leaving this Court and Claimants to guess the factual and legal basis for the government's claims. Further, the offenses are insufficiently stated. "Drug trafficking" and "conspiracy to commit drug trafficking" are not crimes under the cited statutes. These are colloquial phrases and do not sufficiently describe the offenses the government is claiming were committed. The conclusory claims do not satisfy Supplemental Rule G(2).

## VI.    **Forfeiture is Time-Barred**

Under 18 U.S.C. § 984(c): "No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense." This limitation is mandatory and applies to "any forfeiture action *in rem* in which the subject property

16

is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution . . . , or other fungible property." *Id.*, § 984(b)(1). *Marine Midland Bank v. United States*, 1994 WL 381536, *3 (S.D.N.Y. July 20, 1994) (forfeiture claim based upon monies in account time-barred under mandatory one-year limitations statute).

As an initial matter, the Complaint is devoid of dates in which any of the Defendant Property was purchased or generated. According to the Complaint, the investigation began in 2019 and a "cooperating defendant" developed in May and June 2020, who advised Bregman was a "client" who used FastBox.

Additionally, to the extent that the government is seeking forfeiture under the theory that revenue from licensed cannabis companies—operating in, and lawfully under the laws of, one of the fifty United States—is forfeitable under 21 U.S.C. § 881(a)(6), the government has been aware of *for a decade*, through the filing of corporate documents and tax returns, that these entities were generating revenue from cannabis. The government is well beyond the statutory timeframe to forfeit.

## VII.    **Forfeiture Would Violate the Fifth Amendment Due Process and Equal Protection Guarantees, the Eighth Amendment Excessive Fines Clause, and the Tenth Amendment Limitation on Federal Action**

The Controlled Substances Act does not preempt state law. 21 U.S.C. § 903. Thus, to the extent that this Complaint involves selective prosecution of licensed,

17

state-legal marijuana production, it must be dismissed as it is in violation of the Fifth Amendment's due process clause, incorporated equal protection guarantees, and "the constitutional role of States as sovereign entities"[10] to prosecute their own crimes under the Tenth Amendment, particularly whether there is no compelling federal interest in prohibiting the conduct. Further, it is an infringement of individual liberty for the federal government to regulate intrastate use of cannabis when the voters of the state—and the states themselves—have decided it should be legalized.[11]

The Complaint seeks to seize property based on "illegal marijuana sales," but to the extent any purportedly "illegal" sales alleged in the Complaint were conducted via a state-licensed and state-regulated cannabis company, the question is refuted by the authorization of the state itself. California, the most populous state in the nation with over 39 million people, legalized the use of cannabis and has its own laws strictly regulating cannabis businesses. The Complaint has not even acknowledged these laws—never mind sufficiently alleged that the laws have been violated. By intruding into an area more properly left to state regulation, the

---

[10] *Alden v. Maine*, 527 U.S. 706, 713 (1999).

[11] "The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding." *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting).

government here has arbitrarily plucked out the Claimants' property as subject to forfeiture. The government has declined to prosecute hundreds, if not thousands, of defendants in circumstances similar to those alleged here. There is no rational basis for this civil prosecution when others who participate in state-sanctioned regulatory activity throughout the country are not prosecuted.

The arbitrariness of this civil prosecution calls its constitutionality severely into question and warrants dismissal. Indeed, the Department of Justice ("DOJ") has instituted a policy of not prosecuting those who engage in sales pursuant to state regulatory schemes—and that stated policy in turn has led people throughout the country to participate in such regulatory programs, on the understanding that by doing so they do not expose themselves to prosecution. The government's decision to prosecute this matter stands in sharp contrast to its stated policy and its practice of the last    several years. A prosecutor's discretion is "subject to constitutional constraints," *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citing *United States v. Batchelder*, 442 U.S. 114, 125 (1979), and this is precisely the type of unconstrained prosecution that implicates due process and equal protection laws. For similar reasons, the Complaint must be dismissed under the void for vagueness doctrine as applied here. The vagueness doctrine requires "that ordinary people can understand what conduct is prohibited and in a manner that does not encourage

19

arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Given the comprehensive state regulatory scheme that invites the conduct alleged here—and the DOJ's stated policy of not prosecuting people who participate in such a scheme—the Claimants here were not on fair notice as required by due process.

The Complaint also must be dismissed because it seeks forfeiture in violation of the Tenth Amendment, which confirms that "the power of the Federal government is subject to limits that may, in a given instance, reserve power to the States." *New York v. United States*, 505 U.S. 144, 157 (1992). Like the due process clause, this separation of the two spheres is "one of the Constitution's structural protections of liberty." *Printz v. United States*, 521 U.S. 898, 921 (1997). The federal government "may not command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Id*. at 935. Yet the federal government does precisely that by allowing states to develop marijuana legalization schemes only to turn around and seemingly allege that a decision to opt into such a regulatory scheme is a basis for federal prosecution. In so doing, the government improperly "conscript[s] state governments as its agents." *New York*, 505 U.S. at 178. The direct use of a state regulatory scheme— one *aimed at legal participation in the marijuana industry*—to identify targets for

federal drug prosecution represents a blatant violation of the anti-commandeering principle and warrants dismissal of the Complaint.

Additionally, forfeiture of the Defendant Property would violate the Excessive Fines Clause of the Eighth Amendment, which "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Austin v. United States*, 509 U.S. 602, 609–10 (1993) (internal citation and quotation marks omitted). The Complaint does not describe a quantity of marijuana supposedly connected to the Defendant Property to determine a reasonable benchmark for a fine. Further, there are no facts contained in the Complaint regarding Brooke Bregman. Any forfeiture of her interest in the Defendant Property would be wholly improper. *See, e.g., von Hofe v. United States*, 492 F.3d 175 (2d Cir. 2007) (finding forfeiture of wife's interest in marital home where husband cultivated marijuana to be an excessive fine).

WHEREFORE, Claimants Adam and Brooke Bregman, through undersigned counsel, respectfully request that this Court enter an order dismissing the Complaint.

Undersigned counsel certifies that this Brief is in compliance with NECivR. 7.1, contains 5056 words, and that no generative artificial intelligence was used in the drafting of this Brief.

Respectfully submitted,

**BLACK SREBNICK**
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Tel. (305) 371-6421

/s/ *Howard Srebnick*
**HOWARD SREBNICK, ESQ.**
Florida Bar No. 919063
E-mail: HSrebnick@RoyBlack.com
Admitted *pro hac vice* in this case

Counsel for Adam Bregman

/s/ *Alyssa Silvaggi*
**ALYSSA SILVAGGI, ESQ.**
Florida Bar No. 114129
E-mail: ASilvaggi@RoyBlack.com
Admitted *pro hac vice* in this case

Counsel for Adam Bregman

/s/ *Richard C. Klugh*
**Richard C. Klugh, Esq.**
Fla. Bar No. 305294
Courthouse Center, Penthouse One
40 NW Third Street
Miami, FL 33128
Tel. (305) 374-3998
E-Mail rickklu@aol.com
Admitted *pro hac vice* in this case

Counsel for Brooke Bregman

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 21, 2025, the undersigned caused the foregoing to be filed with the United States District Court for the District of Nebraska using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

KIMBERLY C. BUNJER, #20962
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506
Tel: (402) 661-3700
Fax: (402) 345-5724
E-mail: kim.bunjer@usdoj.gov

Attorney for Plaintiff

MIKALA PURDY-STEENHOLDT
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506
Tel: (402) 661-3700
Fax: (402) 345-5724
E-mail: MPurdySteenholdt@usa.doj.gov

Attorney for Plaintiff

/s/ *Alyssa Silvaggi*
**ALYSSA SILVAGGI, ESQ.**

23